1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6

7   KEVIN COLLINS,                          Case No. 20-cv-05477-EMC
8                    Plaintiff,
                                            **ORDER GRANTING DEFENDANTS'**
9          v.                               **MOTION TO DISMISS FIRST**
                                            **AMENDED COMPLAINT**
10  COUNTY OF ALAMEDA, et al.,
                                            Docket No. 12
11                   Defendants.
12
13

14          Plaintiff Kevin Collins was arrested and imprisoned for the shooting of a prostitute,

15  Radajsha Briggs, on December 7, 2017.  Almost two years later, Mr. Collins was released and the

16  charges against him dismissed.  Mr. Collins thereafter filed suit, asserting a violation of his rights

17  under both federal and state law, including but not limited to 42 U.S.C. § 1983.  Mr. Collins has

18  sued Alameda County, the County DA (Nancy O'Malley), and a DDA (Ashley Carvolth).  He has

19  also sued the City of Oakland, the Chief of Police (Anne Kirkpatrick), and various individual

20  police officers.  Currently pending before the Court is a motion to dismiss the operative first

21  amended complaint ("FAC") filed by Alameda County, Ms. O'Malley, and Ms. Carvolth

22  (collectively, the "County Defendants").

23                  **I.       FACTUAL & PROCEDURAL BACKGROUND**

24          The FAC is a lengthy document, consisting of 143 pages and 351 paragraphs.  The gist of

25  the FAC, however, is that there was a conspiracy among Defendants to arrest, search, prosecute,

26  and imprison Mr. Collins.  *See* FAC ¶ 1.  Mr. Collins alleges that Defendants, *inter alia*:

27          •   ignored the fact that the victim, Ms. Briggs, dramatically changed her description

28              of the assailant;

United States District Court
Northern District of California

1

2

3

4

5

- failed to investigate both with respect to witnesses and other possible suspects;

- suppressed video evidence on Mr. Collins's cell phone showing he was with his girlfriend a few hours before the incident;

- failed to conduct tests on Mr. Collins's gun to see if it had recently been fired; and

- fabricated evidence against Mr. Collins through, *e.g.*, improper photo lineups.

6

7

8

9

10

Although, as noted above, the FAC is lengthy, specifics on the involvement of Ms. O'Malley and Ms. Carvolth – and therefore, the County – are minimal.  There are many conclusory allegations related to Ms. O'Malley in particular.  The main nonconclusory allegations against Ms. O'Malley and/or Ms. Carvolth relate to (1) a meeting between the police and the DA's Office and (2) a series of photo lineups.

11

A.    Meeting

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

With respect to the meeting, Mr. Collins alleges as follows.  On December 21, 2017 (approximately two weeks after the shooting), the police, Ms. O'Malley, and Ms. Carvolth met and reviewed the police reports, the statements by Ms. Briggs, and the police affidavits in support of an arrest warrant and search warrant.  *See* FAC ¶ 85.  (Mr. Collins had been arrested on December 20, 2017.  *See* FAC ¶ 191.)  By the time of the meeting, Ms. O'Malley and Ms. Carvolth already knew about and had already seen the video evidence on Mr. Collins's cell phone which showed that he was with his girlfriend a few hours before the shooting.  *See* FAC ¶¶ 86-88.  Although the FAC does not expressly state what the purpose of the meeting was, it may reasonably be inferred that the purpose was to decide whether to prosecute Mr. Collins who had been arrested the day before.  *See, e.g.*, FAC ¶ 85 (alleging that Ms. Carvolth "knew she was legally and ethically obligated not to prosecute a case which on its face could not be proven beyond a reasonable doubt"); FAC ¶ 90 (alleging that Ms. O'Malley "had a legal and ethical obligation to stop the prosecution of Mr. Collins since the evidence included many inconsistencies as well as evidence pointing to Mr. Collins' innocence").  At the hearing, Mr. Collins expressly confirmed that this was, in fact, the purpose of the meeting.

27

B.    Photo Lineups

28

As for the photo lineups, Mr. Collins alleges as follows.  Ms. Briggs was shown several

United States District Court
Northern District of California

2

1  photo lineups after the shooting.

2        1.    First Photo Lineup, December 11, 2017

3        The first photo lineup took place on December 11, 2017, a few days after the shooting.

4  Ms. Briggs was shown six photos.  The fourth one was of Mr. Collins: a black-and-white photo

5  obtained from his driver's license.  *See* FAC ¶¶ 44, 46.  Under the section "Viewer comments,"

6  Ms. Briggs wrote "No" under the first five photos (including Mr. Collins) and "Yes" under the

7  sixth photo.  *See* FAC, Ex. 6 (first photo lineup).

8        2.    Second Photo Lineup, December 19, 2017

9        The following day, December 12, 2017, the police initiated a traffic stop of Mr. Collins,

10  the purpose of which was to obtain a better and/or color photo of Mr. Collins.  *See* FAC ¶¶ 47-50;

11  *see also* FAC, Ex. 13 (video of traffic stop); FAC, Ex. 7 (photo taken from the traffic stop).

12        One week later, on December 19, 2017, a second photo lineup took place.  This photo

13  lineup used six color photos – edited so that only the heads/faces were shown with no background

14  visible.  As with the first photo lineup, Mr. Collins appeared in the fourth photo.  This time the

15  photo was of Mr. Collins from the traffic stop.  *See* FAC, Ex. 8 (second photo lineup).  Mr.

16  Collins's photo differed from the other photos in the lineup in that he was looking to the side

17  instead of straightforward (as would be done with a mugshot).

18      &bull;  For the second photo, Ms. Briggs's written comment was: "I beleave [sic] this is

19          the man who shot me.  He has features [sic] not him or not sure."

20      &bull;  For the fourth photo (Mr. Collins), Ms. Briggs's written comment was: "I am

21          almost sure this is the person I got in the car with and the same person came on 11

22          Ave[.] and shot me."

23      &bull;  For the fifth photo, Ms. Briggs's written comment was: "This man has strong

24          featurs [sic] just like the man who shot me almost a lookalike."

25      &bull;  For the sixth photo, Ms. Briggs's written comment was: "He has eyes and lips like

26          him."

27  (Ms. Briggs did not have written comments for the other photos.)

28        The officer who prepared the second lineup – Officer Hight – testified at Mr. Collins's

United States District Court
Northern District of California

preliminary hearing about that lineup.  He stated as follows: "'Once I had found enough photographs, I had to – I had presented the photo lineup that I recently developed to the District Attorney's office, and asked if there were any objections that they felt before I presented that photograph of his lineup.  And I was told that the photo lineup was fine.'"  FAC ¶¶ 51, 122.  On its face, the statement does not identify who from the DA's Office gave approval to the lineup.

### 3.    Third Photo Lineup

A third photo lineup was also prepared – and implicitly shown to Ms. Briggs.  The third lineup consisted of two photos only.  The first photo was the photo of Mr. Collins that was used in the *first* lineup (*i.e.*, the black-and-white driver's license photo).  The second photo was the sixth photo used in the *second* lineup (*i.e.*, a color photo of a man under which Ms. Briggs wrote: "He has eyes and lips like him").  *See* FAC ¶ 56 & Ex. 10 (third photo lineup).  The date that Ms. Briggs was shown the third photo lineup is not clear from the FAC.  At the hearing, Mr. Collins represented that the date was December 19, 2017.

### 4.    Fourth Photo Lineup

Finally, a fourth photo lineup was prepared – comparing the two photos of Mr. Collins from the first and second lineups (*i.e.*, the black-and-white driver's license photo and the color traffic stop photo).  *See* FAC ¶ 57.  Here as well the date that Ms. Briggs was shown the fourth lineup is not clear from the FAC.  At the hearing, Mr. Collins represented that the date was December 19, 2017.

### 5.    Summary

As indicated by the above, the DA's Office is mentioned specifically for the second photo lineup only.  It appears that Officer Hight relied on, *inter alia*, the second photo lineup to support his sworn affidavit in support of a *Ramey* warrant.  *See* FAC ¶ 58 *et seq.*

C.    Causes of Action

Based on, *inter alia*, the above allegations, Mr. Collins has asserted the following causes of action:

> (1)    Conspiracy in violation of 42 U.S.C. § 1985 (against all Defendants).  *See, e.g.*, FAC ¶ 158 (alleging a conspiracy between the County Defendants and the City

4

Defendants to fabricate and falsify evidence, including the "fraudulently acquired" photo of Mr. Collins used for the second photo lineup).

(2)    Illegal search and seizure in violation of 42 U.S.C. § 1983 (against the individual defendants). *See, e.g.*, FAC ¶ 166 (referring to photo lineups).

(3)    Fraud in violation of 42 U.S.C. § 1983 (against the individual defendants). *See, e.g.*, FAC ¶ 173 (alleging that photo taken of Mr. Collins at the traffic stop was fraudulently obtained).

(4)    Invasion of privacy in violation of 42 U.S.C. § 1983 (against the individual defendants). *See, e.g.*, FAC ¶ 181 (referring to photo taken of Mr. Collins at the traffic stop).

(5)    False arrest in violation of 42 U.S.C. § 1983 (against the individual defendants).

(6)    False imprisonment in violation of 42 U.S.C. § 1983 (against the individual defendants).

(7)    Prosecutorial misconduct in violation of 42 U.S.C. § 1983 (against Ms. O'Malley and Ms. Carvolth). *See, e.g.*, FAC ¶ 213 *et seq.* (referring to investigation, false arrest, and false imprisonment, including but not limited to photo lineups).

(8)    Malicious prosecution in violation of 42 U.S.C. § 1983 (against the individual defendants). *See, e.g.*, FAC ¶ 223 (alleging that Defendants knew there was insufficient evidence against Mr. Collins).

(9)    Fabricated evidence in violation of the Fourth and Fourteenth Amendments (against the individual defendants). *See, e.g.*, FAC ¶ 239 (alleging that officers told lies to Mr. Collins during his interrogation).

(10)    Suppression of exculpatory evidence in violation of 42 U.S.C. § 1983. *See, e.g.*, FAC ¶ 259 (referring to Mr. Collins's cell phone that contained video he was with his girlfriend several hours before the shooting).

(11)    *Monell* liability (against the County and City) based on the acts/omissions of final policymakers Ms. O'Malley and Chief Kirkpatrick.

(12)   *Monell* liability (against the County and City) based on a failure to train or supervise.

(13)   Violation of the Fourteenth Amendment in violation of 42 U.S.C. § 1983 (against the individual defendants).

(14)   Negligent supervision in violation of 42 U.S.C. § 1986 (against the individual defendants).

(15)   *Monell* liability (against the County and City) based on pattern, practice, or policy.

(16)   *Monell* liability (against the County and City) based on ratification.

(17)   Conspiracy (against the individual defendants).

(18)   Violation of the right to privacy as protected by the California Constitution (against the individual defendants).

(19)   Fraud (against the individual defendants).

(20)   False arrest (against the individual defendants).

(21)   False imprisonment (against the individual defendants).

(22)   Negligent failure to train/supervise and negligent retention in violation of California Government Code § 815.5 (against the individual defendants).

(23)   Negligent investigation in violation of California Government Code § 815.5 (against the individual defendants).

(24)   Malicious prosecution (against the individual defendants).

(25)   Intentional infliction of emotional distress (against the individual defendants).

(26)   Defamation per se (against the individual defendants).

(27)   Private attorney's fees pursuant to California Civil Code § 1021.5 (against the individual defendants).

(28)   Injunctive relief (against the individual defendants).

## II.      DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

United States District Court
Northern District of California

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

B.     Section 1983 Claims

As indicated above, the first sixteen causes of action are federal claims, largely predicated on § 1983.

1.     Conclusory Allegations

As a preliminary matter, the County Defendants argue that the federal claims are deficient because the bulk of the factual allegations specifically supporting the legal claims are conclusory. The County Defendants are correct.  Notably, in his opposition brief, Mr. Collins focuses on only two specific events – *i.e.*, the approval of the photo lineup and the reviewing of police reports.  *See* Opp'n at 10.

2.     Federal Claims Against the Individual Prosecutors

a.     Absolute Prosecutorial Immunity

As for the two specific events, the County Defendants assert that Ms. O'Malley and Ms.

Carvolth are protected by absolute prosecutorial immunity.  The Court agrees in part.

i.    Decision to Prosecute

With respect to the decision to prosecute (a decision that appears to have been made at or about the time of the December 17, 2017, meeting referenced above), Ms. O'Malley and Ms. Carvolth do have absolute prosecutorial immunity.  Both Supreme Court and Ninth Circuit case law clearly support this holding.  In *Hartman v. Moore*, 547 U.S. 250 (2006), the Court stated that "[a] *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute."  *Id.* at 261-62. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court stated that, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."  *Id.* at  431.  And in *Roe v. City & County of San Francisco*, 109 F.3d 578 (9th Cir. 1997), the Ninth Circuit underscored that "it is well established that a prosecutor has absolute immunity for the decision to prosecute."  *Id.* at 583-84 (also holding that absolute immunity applies to a prosecutor's decision not to prosecute).  Thus, to the extent Mr. Collins sues the individual prosecutors for their decision to prosecute Mr. Collins, they are protected  by absolute prosecutorial immunity.

ii.    Approval of the Second Photo Lineup

However, Ms. O'Malley and Ms. Carvolth do not have absolute prosecutorial immunity with respect to their approval of the photo lineup.  The FAC indicates that the police asked for the prosecutors' *legal advice* on whether the photo lineup was acceptable, and that request was made *before any arrest was made*.  (In fact, it appears that the photo lineup was used to support the request for an arrest warrant.)  Decisions of the Supreme Court support Mr. Collins's position that these facts do not support absolute prosecutorial immunity.

For example, in *Burns v. Reed*, 500 U.S. 478 (1991), police officers consulted with a prosecutor, seeking legal advice as to whether they could interview a suspect under hypnosis.  The prosecutor told the officers that they could proceed with the hypnosis.  The officers then consulted with the prosecutor a second time, asking whether there was probable cause to arrest the suspect based on the interview under hypnosis.  The prosecutor told the officers that they probably had

probable cause, and therefore the officers arrested the suspect.  *See id.* at 481-82.  The Supreme Court held that the prosecutor did not have absolute immunity with respect to the legal advice that had been given.

- First, there was no "historical or common-law support for extending absolute immunity to such actions by prosecutors." *Id.* at 492.

- Second, there was no risk of vexatious litigation against a prosecutor if absolute immunity were not given.  "[A] suspect or defendant is not likely to be as aware of a prosecutor's role in giving advice as a prosecutor's role in initiating and conducting a prosecution.  But even if a prosecutor's role in giving advice to the police does carry with it some risk of burdensome litigation, the concern with litigation in our immunity cases is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process.  Absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation.  That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id.* at 494 (emphasis in original).

- Finally, a prosecutor's act of giving legal advice is not necessarily "subjected to the 'crucible of the judicial process'" – particularly "if a suspect is not eventually prosecuted." *Id.* at 496.

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the Supreme Court held that there was no absolute immunity for prosecutors who had allegedly manufactured false evidence that would link the defendant's boot with the bootprint the murderer left on the victim's front door.  The defendant asserted that, "[t]o obtain this false evidence, . . . the prosecutors shopped for experts until they found one who would provide the opinion they sought." *Id.* at 272.  The Supreme Court noted first that

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and

> corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.  When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Id.* at 273.  The Court then stated that the issue was whether the prosecutors

> were functioning as "advocates" when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot.  A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer.  The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period.  Their mission at that time was entirely investigative in character. *A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.*

> It was well after the alleged fabrication of false evidence concerning the bootprint that a special grand jury was empaneled. And when it finally was convened, its immediate purpose was to conduct a more thorough investigation of the crime – not to return an indictment against a suspect whom there was already probable cause to arrest. Buckley was not arrested, in fact, until 10 months after the grand jury had been convened and had finally indicted him. Under these circumstances, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates.

*Id.* at 274-75 (emphasis added); *cf. Torres v. Goddard*, 793 F.3d 1046, 1053 (9th Cir. 2015) (distinguishing seeking a warrant to obtain evidence to prosecute an indictment (which is protected by absolute immunity) from seeking a warrant to obtain evidence as "'collateral investigation into new crimes'" (which is not protected by absolute immunity)).

Under *Burns* and *Buckley*, the critical issue for absolute prosecutorial immunity is whether the prosecutor's actions were closely connected to her role as an advocate in judicial proceedings; absolute prosecutorial immunity does not obtain simply because a prosecutor uses her legal knowledge or acts in her capacity as an attorney.  *Cf. Buckley*, 509 U.S. at 273 (stating that "[t]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor").  The giving of legal advice outside the context of judicial proceedings is not subject to absolute immunity.  Thus, as alleged here, the fact that the individual prosecutors gave legal advice before an arrest was made is insufficient to give rise to absolute prosecutorial immunity.

At the hearing, the County Defendants argued that absolute prosecutorial immunity applies

United States District Court
Northern District of California

10

United States District Court
Northern District of California

based on *Roe*, where the Ninth Circuit stated: "a prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity." *Roe*, 109 F.3d at 584. But this statement from *Roe* must be taken in context. In support of the statement, the Ninth Circuit cited *Buckley*, which contains the following passage:

> A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury *after a decision to seek an indictment has been made*.

*Buckley*, 509 U.S. at 273 (emphasis added). As noted above, here, the prosecutors allegedly approved the photo lineup before any charges were brought against Mr. Collins. They were giving advice relative to the investigation, not acting as advocates in furtherance of a prosecution.

### b.    Qualified Immunity

The County Defendants argue that, even if Ms. O'Malley and Ms. Carvolth are not protected by absolute immunity for the approval of the photo lineup, they are still protected by qualified immunity.

Here, the County Defendants have a meritorious argument, primarily because the FAC does not make clear what exactly the prosecutors knew – and what facts indicate they had such knowledge – at the time they approved the lineup. At the hearing, Mr. Collins clarified his theory of liability with respect to the photo lineup. To wit:

(1)    The prosecutors knew at the time of the second photo lineup that there had been a prior photo lineup where Ms. Briggs did not identify Mr. Collins as the perpetrator, and thus should not have approved the second lineup.

(2)    The prosecutors knew at the time of the second photo lineup that the photo of Mr. Collins in the second photo lineup had been obtained "fraudulently" – *i.e.*, through a "ruse" traffic stop.

(3)    The prosecutors knew at the time of the second photo lineup that the lineup was

11

United States District Court
Northern District of California

improperly suggestive because (a) the photos in the lineup had been "photoshopped" to remove all background so that only the individuals' heads were shown, (b) Mr. Collins's photo was placed in the same position (fourth) as the first photo lineup, and (c) Mr. Collins's photo stood out because it was the only one in which the individual was looking to the side instead of straightforward.[1]

But these theories are not clearly articulated in the FAC. Moreover, even if they had been, Plaintiffs cannot simply claim in conclusory fashion that the prosecutors had the above knowledge. Rather, Plaintiffs must be able to plead a factual basis for that knowledge. The FAC as pled is lacking in this regard. The Court acknowledges that the FAC does refer to a police officer (Officer Hight) making the following statement at the preliminary hearing: "'Once I had found enough photographs, I had to – I had presented the photo lineup that I recently developed to the District Attorney's office, and asked if there were any objections that they felt before I presented that photograph of his lineup. And I was told that the photo lineup was fine.'" FAC ¶¶ 51, 122. But this statement says nothing about what the prosecutors knew at the time they gave their approval, nor does it shed any light as to *how* the prosecutors had any such knowledge. Moreover, although Mr. Collins conclusorily alleges that Ms. O'Malley, the DA, actually approved the second photo lineup, the FAC contains no specific facts establishing a plausible claim that *the* DA herself would have been present at or consulted for the December 19 photo lineup; it seems more likely that such a scenario would involve a line-level prosecutor rather than the DA herself.

In short, based on the allegations in the FAC as they currently stand, Mr. Collins has alleged in conclusory terms only that Ms. O'Malley, the DA was involved in the approval of the photo lineup; furthermore, even if both Ms. O'Malley and Ms. Carvolth gave approval to the photo lineup, Mr. Collins has merely alleged that the prosecutors gave their approval without

---

[1] Mr. Collins does not appear to make a claim that the prosecutors did not know about the first lineup but still should not have approved the second lineup because it was improperly suggestive in light of (1) the photoshopping and (2) Mr. Collins's turned head.

knowing anything else (such as the first lineup or the circumstances under which the color photo of Mr. Collins was obtained). Based on these facts, qualified immunity applies because Mr. Collins has failed to show that the prosecutors violated a constitutional right that was clearly established at the time of the conduct.[2] *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

The Court, however, shall give Mr. Collins leave to amend. Mr. Collins's amended pleading must address the deficiencies identified above, *i.e.*, (1) what is the factual basis for the claim that Ms. O'Malley (and not just Ms. Carvolth) approved the second photo lineup; (2) what did the prosecutors allegedly know at the time of the second photo lineup; and (3) what is the factual basis for the claim that the prosecutors had such knowledge? Although allegations in the amended pleading may be made on information and belief, Mr. Collins must still have a Rule 11 good faith basis for making his allegations. The Court also notes that, even though it is demanding more specificity from Mr. Collins, it is not asking Mr. Collins to ignore Rule 8's directive that a pleading must contain "a *short and plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Even taking into account the scope of the alleged misconduct in this case, the FAC as currently pled is bloated (as noted above, consisting of 143 pages and 351 paragraphs).

3.    Federal Claims Against the County (*Monell* Claims)

Finally, the County Defendants argue that the federal claims against the County (*i.e.*, the *Monell* claims) should be dismissed because they have been conclusorily pled. To the extent Mr. Collins bases municipal liability on Ms. O'Malley's act of approving the photo lineup – Ms. O'Malley being the final policymaker for the County – the *Monell* claims would theoretically be viable. *See Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (stating that, "[i]n *Pembaur*, the [Supreme] Court held that under certain circumstances a municipality may be held liable for a single decision by a municipal policymaker" who "'possesses final authority to establish

---

[2] Although the Court finds in the prosecutors' favor on qualified immunity, it rejects the County Defendants' argument that dismissal is warranted based on the *Noerr-Pennington* doctrine. Approval of the lineup has nothing to do with any petitioning activity. Indeed, at the time of the lineup, Mr. Collins had not even been arrested. *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) ("Under the *Noerr-Pennington* doctrine, 'those who petition government for redress are generally immune from antitrust liability.'").

United States District Court
Northern District of California

municipal policy with respect to the action ordered'"). But, as discussed above, the FAC lacks specific allegations indicating that Ms. O'Malley herself gave approval to the lineup; moreover, the FAC lacks specific allegations as to what Ms. O'Malley knew at the time of the lineup and *how* she had such knowledge. No plausible claim as to her knowledge is stated. Thus, the Court agrees with the County Defendants that the *Monell* claims must be dismissed.

The Court also notes that, to the extent Mr. Collins asserts municipal liability based on, *e.g.*, a policy or custom (fifteenth cause of action), failure to train or supervise (twelfth cause of action), or ratification (sixteenth cause of action), the allegations in the FAC are too conclusory as well.

Consistent with the above, the Court shall give Mr. Collins an opportunity to amend his *Monell* claims – *i.e.*, to the extent liability is predicated on approval of the photo lineup.[3]

C.   State Law Claims

In addition to the federal claims, Mr. Collins asserts state law claims at Counts 17-28.

1.   Statutory Immunity

Similar to above, the County Defendants contend they have immunity from the state law claims, albeit immunity based on California statutes. Specifically, the County Defendants assert that the individual prosecutors have immunity based on California Government Code § 820.2 and § 821.6, and the County based on § 815.2. These statutes provide as follows:

- Section 820.2: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. As the California Supreme Court

---

[3] Mr. Collins has no plausible *Monell* claim to the extent he seeks to hold the County liable for the decision to prosecute. *See Weiner v. San Diego Cty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("conclud[ing] that a California district attorney is a state officer when deciding whether to prosecute an individual"); *Cooley v. City of Walnut Creek*, No. 18-cv-00719-YGR, 2018 U.S. Dist. LEXIS 205358, at *19-21 (N.D. Cal. Dec. 4, 2018) (noting that "a deputy district attorney acts on behalf of the state, and not the county, in initiating and prosecuting criminal cases" and thus "no *Monell* claim can be stated against the County"); *Pitts v. Cty. of Kern*, 17 Cal. 4th 340, 362 (1998) ("conclud[ing] that when preparing to prosecute and when prosecuting criminal violations of state law, a district attorney represents the state and is not a policymaker for the county").

United States District Court
Northern District of California

14

has explained, "[i]mmunity is reserved for those basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly"; "there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Barner v. Leeds*, 24 Cal. 4th 676, 685 (2000) (emphasis and internal quotation marks omitted).

- Section 821.6.  "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *Id.* § 821.6.

- Section 815.2.  "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." *Id.* § 815.2(b).

As noted above, the FAC as pled identifies only two specific actions by the prosecutors, Ms. O'Malley and Ms. Corvalth – *i.e.*, meeting with the police on December 21, 2017 (*i.e.*, after Mr. Collins had been arrested) and approving the second photo lineup.

        a.    <u>Decision to Prosecute</u>

As noted above, the purpose of the meeting on December 21 was to decide whether to prosecute.  The Court holds that all state claims based on the decision to prosecute are protected by § 820.2 immunity.

Immunity under § 820.2 is "reserved for those basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." *Barner*, 24 Cal. 4th at 685 (internal quotation marks and emphasis omitted).  In contrast, "there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Id.* (internal quotation marks omitted).

Although only basic policy decisions are immunized, basic policy decisions can still encompass individualized determinations.  For example, the California Supreme Court has held that "the decision by individual members of a school board whether to vote to renew a superintendent's employment contract was 'a peculiarly sensitive and subjective one, with

15

fundamental policy implications,'" and therefore § 820.2 immunity applied.  *Id.*; *accord Jacqueline T. v. Alameda County Child Protective Servs.*, 155 Cal. App. 4th 456, 468 (2007) (holding that defendant social workers' conclusion that dependency proceedings should not be initiated were "covered by the broad grant of immunity section 821.6 affords . . . as well as the grant of immunity section 820.2 affords to sensitive policy decision that result from a governmental entity's unique decisionmaking or planning processes").  The California Supreme Court has also held that "[t]he decision to parole [a delinquent child] comprises the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination"; in contrast, "[o]nce an official reaches the decision to parole to a given [foster] family, . . . the determination as to whether to warn the foster parents of latent dangers facing them presents no such reasons for immunity."  *Johnson v. State of Cal.*, 69 Cal. 2d 782, 795 (1968); *cf. Barner*, 24 Cal. 4th at 688 (holding that, even if the initial decision on whether to provide representation by a public defender "is a sensitive policy decision that requires judicial abstention," § 820.2 immunity would not extend to the public defender's actual representation of the criminal defendant).

Here, of course, the Court is confronted with a different kind of individualized determination, namely, the decision of a prosecutor on whether to prosecute.  Nevertheless, the Court concludes that immunity should be afforded to this determination because, like the above, it is a sensitive policy decision in which interference by the judiciary would be unseemly.  The Supreme Court has explained that the considerations underlying federal absolute prosecutorial immunity "include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by the public trust."  *Imbler*, 424 U.S. at 423.  The same concerns are equally applicable here.  Prosecutors must have room to breathe, *i.e.*, freedom, *see id.* at 684-85, in making charging decisions without fear.  Notably, several district court decisions are in accord.  *See, e.g., Hudson v. Del Norte Office of the DA*, No. C 00-0093 WHA, 2000 U.S. Dist. LEXIS 3984, at *7 (N.D. Cal. Mar. 24, 2000) (stating that § 820.2 "is given an 'expansive interpretation' in order to best further the rationale of the

immunity, that is to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties"); *Bagdasaryan v. City of L.A.*, No. 2:15-cv-01008-JLS (KES), 2018 U.S. Dist. LEXIS 224542, at *100 (C.D. Cal. Oct. 22, 2018) (R&R) (stating that "[s]ection 820.2, which immunizes public employees from liability for discretionary acts, applies where Defendant's employees made the discretionary decision to pursue a criminal complaint against Masis Bagdasaryan"); *Gregory v. Fresno Cty.*, No. 1:18-cv-00524-LJO-SAB, 2018 U.S. Dist. LEXIS 152327, at *131-32 (E.D. Cal. Sep. 6, 2018) (R&R) (stating that "Defendants [county and state prosecutors] are entitled to immunity under section 820.2 for the decision to investigate or prosecute the alleged violations of the Act or the California Penal Code, but the decisions on how the investigation or prosecution proceeded are not discretionary acts within the meaning section 820.2"). *Compare Reinhardt v. Santa Clara Cty.*, No. C05-05143 HRL, 2006 U.S. Dist. LEXIS 101985, at *28 (N.D. Cal. Nov. 1, 2006) (declining to apply § 820.2 where plaintiff's allegations were about "the negligent behavior of the individual prosecutors assigned to Bianco's murder" – *i.e.*, to the day-to-day implementation of previously established policies").

Because the individual prosecutors have immunity under § 820.2 for the decision to prosecute,[4] the County would also have immunity under § 815.2 – although, as noted above, the more appropriate analysis is that the County cannot even be held liable for the decision to prosecute because, "when preparing to prosecute and when prosecuting criminal violations of state law, a district attorney represents the state and is not a policymaker for the county." *Pitts*, 17 Cal. 4th at 362.

To the extent the County Defendants have raised not only § 820.2 immunity but also §

---

[4] The Court need not address whether § 820.2 immunity is inapplicable where prosecutors engage in, *e.g.*, purposeful fabrication of evidence in the course of prosecution. *Compare Inman v. Anderson*, 294 F. Supp. 3d 907, 918 (N.D. Cal. 2018) (Koh, J.) (stating that, under federal law, "courts have recognized that after a prosecution has been initiated against a specific defendant, prosecutorial immunity attaches to any alleged fabrication of evidence or presentation of that fabricated evidence by a prosecutor in support of the state's case against the defendant"); *see also Paine v. City of Lompoc*, 265 F.3d 975, 982 (9th Cir. 2001) (noting that, under *Imbler*, absolute prosecutorial immunity "protects the prosecutor from liability for knowingly using perjured testimony"). No such allegation is made here.

821.6 immunity, the Court holds that there is § 821.6 immunity – but its application is limited. Specifically, only the malicious prosecution claim is subject to dismissal based on § 821.6. *See, e.g.*, *Garmon v. Cty. of L.A.*, 828 F.3d 837, 847 (9th Cir. 2016) (holding that § 821.6 provides immunity for malicious prosecution claims only based on a California Supreme Court decision *Sullivan*, in spite of post-*Sullivan* state appellate court decisions holding otherwise); *Sharp v. Cty. of Orange*, 871 F.3d 901, 920-21 (9th Cir. 2017) (acknowledging that "intermediate appellate courts have expanded the [§ 821.6] immunity to investigative steps taken prior to a judicial proceeding, including action by police officers" but, "because California's highest court has not extended § 821.6 immunity to actions outside of malicious prosecution, this immunity does not apply here").

      b.    <u>Approval of Photo Lineup</u>

      The Court, however, reaches a different conclusion to the extent Mr. Collins challenges the prosecutors' alleged approval of the second photo lineup. Here, denying immunity would not constitute unseemly judicial interference or encroachment on prosecutorial independence, particularly when the lineup took place before any arrest of Mr. Collins (*i.e.*, well before the decision to prosecute).

      As for § 821.6 immunity, the Court finds it inapplicable based on Ninth Circuit authority (1) recognizing that "intermediate appellate courts have expanded the [§ 821.6] immunity to investigative steps taken prior to a judicial proceeding" but (2) holding that the immunity does not apply "because California's highest court has not extended § 821.6 immunity to actions outside of malicious prosecution."[5] *Sharp*, 871 F.3d at 920-21.

      Of course, even though there is no statutory immunity for the state law claims based on the approval of the lineup, this does not mean that the claims are viable as pled. Consistent with the above, the Court finds the claims conclusorily pled. Mr. Collins has leave to amend so that he can

---

[5] The Court does not address the County Defendants' additional argument that they are privileged from suit – in particular, the defamation claim – pursuant to California Civil Code § 47. The argument is difficult to assess because it is not even clear from the FAC what the factual basis for the defamation claim is. Because the Court is already giving Mr. Collins an opportunity to amend, it gives him leave to provide a more definite statement as to the factual basis of his defamation claim as well.

1    plead, *inter alia*, what the prosecutors knew at the time of the lineup and *how* they had such

2    knowledge.

3    D.    Punitive Damages

4          The County Defendants contend next that any claim for punitive damages must be

5    dismissed against them: (1) because "a public entity may not be held liable for punitive damages"

6    and (2) because "a claim for punitive damages against governmental employees [requires a

7    showing] that a defendant acted with fraud, oppression or malice, which is entirely absent in [the]

8    FAC."  Mot. at 22.

9          In response, Mr. Collins does not dispute that punitive damages cannot be asserted against

10   the County.  However, he maintains that the individual prosecutors, Ms. O'Malley and Ms.

11   Carvolth, are still subject to punitive damages.  The problem for Mr. Collins is that he has not

12   specified how the individual prosecutors acted with fraud, oppression, or malice.  As discussed

13   above in conjunction with qualified immunity, if all that the prosecutors did was give approval to

14   the second lineup with knowing anything else (such as the first lineup or the circumstances under

15   which the color photo of Mr. Collins was obtained), then it is difficult to see any malice on their

16   part.

17         The Court therefore dismisses the claim for punitive damages against the County with

18   prejudice.  The claim for punitive damages against the individual prosecutors is also dismissed but

19   with leave to amend.

20   E.    Injunctive Relief

21         Finally, the County Defendants argue that Mr. Collins's request for injunctive relief is

22   moot because he has already been released from custody.  *See* Mot. at 23.  Mr. Collins's request

23   for injunctive relief is predicated on the following allegation:

24              Defendants, and each of them, are in possession of Mr. Collins'
                belongings that must be preserved and that contain exculpatory
25              evidence.  Money damages are insufficient and inadequate to
                address the irreparable Mr. Collins will suffer if the items of
26              evidence are destroyed and not preserved.  Demand is hereby made
                for protective order to maintain as evidence following: (1) Mr.
27              Collins' cell phone; (2) The cell phones of Defendants Nuon and
                Gatdula, which were used to take the fraudulent photograph of Mr.
28              Collins; and (3) All of the evidence pertaining to Mr. Collins on the

police vehicle computer used in the traffic stop [and] (4) All of Mr. Collins' belongings still in possession of Defendants. Mr. Collins' cell phone is, and always has been, a key piece of evidence proving his innocence. Mr. Collins will suffer irreparable harm for which money damages would not suffice as a remedy. Hence, the cause of action for injunctive relief is necessary and appropriate to prevent Oakland Police Department and any Defendants from destroying and spoliating any evidence in this case and particularly Mr. Collins cell phone containing exculpatory evidence.

FAC ¶ 351. In his opposition, Mr. Collins also refers to his prayer for relief which includes a request that he be declared factually innocent of all dismissed charges. *See* Opp'n at 24 (arguing that "his dismissed charges and false arrest remain on the books and constitute a current, ongoing harm").

It is not clear, however, that this Court has the power to make a declaration of factual innocence; that would appear to be a matter to be addressed within the state court system. *See* Cal. Pen. Code § 851.8(c) ("In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made.").

As for the injunctive relief, if Mr. Collins is simply seeking a preservation order, that can easily be done in this lawsuit without a need for a claim for injunctive relief. The Court thus dismisses the claim for injunctive relief, without prejudice to Mr. Collins seeking a preservation order (although the parties are expected to meet and confer and, if necessary, file a stipulation and proposed order on preservation).

### III.     CONCLUSION

For the foregoing reasons, the Court grants the County Defendants' motion to dismiss:

- Federal claims.
    - o The Court dismisses *with prejudice* all federal claims asserted against the individual prosecutors which are based on their decision to prosecute.
    - o The Court dismisses without prejudice all federal claims asserted against the individual prosecutors which are based on their approval of the second photo lineup. Mr. Collins has leave to amend.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- o   The Court dismisses *with prejudice* all federal claims asserted against the County which are based on the decision to prosecute.
- o   The Court dismisses without prejudice all federal claims asserted against the County which are based on the approval of the second photo lineup. Mr. Collins has leave to amend.

- • State claims.
  - o   The Court dismisses *with prejudice* all state claims asserted against the individual prosecutors and the County which are based on the decision to prosecute.
  - o   The Court dismisses without prejudice all state claims asserted against the individual prosecutors and the County which are based on the approval of the second photo lineup.  Mr. Collins has leave to amend.

- • Relief.
  - o   The claim for punitive damages against the County is dismissed *with prejudice*.  The claim for punitive damages against the prosecutors is dismissed but with leave to amend.
  - o   The claim for injunctive relief is dismissed.

Mr. Collins has until February 22, 2021, to file an amended complaint consistent with the above.  The only amendments permitted are those described in this opinion.  The County Defendants have until March 15, 2021, to file a response to the amended complaint.

**IT IS SO ORDERED**.

Dated: January 26, 2021

_____
EDWARD M. CHEN
United States District Judge

21