UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| KEVIN COLLINS, | Case No. 20-cv-05477-EMC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| COUNTY OF ALAMEDA, et al., | |
| Defendants. | Docket No. 34 |

Plaintiff Kevin Collins was arrested and imprisoned for the shooting of a prostitute, Radajsha Briggs, on December 7, 2017. Almost two years later, Mr. Collins was released and the charges against him dismissed. Mr. Collins thereafter filed suit, asserting a violation of his rights under both federal and state law, including but not limited to 42 U.S.C. § 1983. Mr. Collins has sued Alameda County, the County DA (Nancy O'Malley), and a DDA (Ashley Carvolth). He has also sued the City of Oakland, the Chief of Police (Anne Kirkpatrick), and various individual police officers. Currently pending before the Court is a motion to dismiss the second amended complaint ("SAC") filed by the County Defendants – *i.e.*, Alameda County, Ms. O'Malley, and Ms. Carvolth.

Having considered the parties' briefs, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the County Defendants' motion.

## I. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

B.   Suppression of Exculpatory Evidence

The County Defendants argue first that any federal claim asserting suppression of exculpatory should be dismissed.  The Court agrees.  Contrary to what Mr. Collins asserts, the Court did dismiss the federal claims based on suppression in considering the County Defendants' motion to dismiss the first amended complaint ("FAC").  The Court held that that factual allegations against the County Defendants were too conclusory, *except* as to "two specific events – *i.e.*, the approval of the [second] photo lineup and the reviewing of police reports [which was part of the decision to prosecute]."  Docket No. 25 (Order at 7).

Moreover, even if the Court had not dismissed the federal claims based on suppressions, it would do so now.  The SAC still does not include any specifics on alleged suppression of evidence by the County Defendants (as opposed to other defendants).

C.   Decision to Prosecute

The County Defendants argue next that certain federal claims should be dismissed because

1  the Court previously dismissed all federal claims based on the decision to prosecute. According to

2  the County Defendants, Mr. Collins continues to assert claims that were barred by the Court's

3  order. But the County Defendants fail to take into account that many of the claims identified in

4  the motion (*e.g.*, for false arrest or imprisonment) are based on the approval of the second photo

5  lineup, and *not* on the decision to prosecute. *See* SAC ¶¶ 209, 222 (in false arrest and false

6  imprisonment claims, alleging that the prosecutors advised Officer Hight "to use admitted

7  fabricated photograph of Mr. Collins" for the photo lineup). The Court cannot hold as matter of

8  law that the allegations do not support a claim that the approval of the second photo line up was a

9  prosecutorial rather than investigatory decision.

10  D.     Approval of Second Photo Lineup

11  The County Defendants argue that all federal claims based on approval of the second photo

12  lineup should be dismissed. Here, the Court analyzes the three County Defendants separately.

13     1.     Ms. O'Malley

14  In the SAC, Mr. Collins continues to assert the claim that Ms. O'Malley, the District

15  Attorney ("DA"), approved the second photo lineup. For the most part, Mr. Collins asks the Court

16  to infer that she was involved in the second photo lineup.

17  For example, at the preliminary hearing, Officer Hight testified as follows regarding the

18  approval of the second photo lineup:

> "I had a hard time trying to find subjects of similar physical build and bald through a lengthy internet search that were quality enough where I could use them as a photograph again, to try to avoid any type of suggestiveness in the photo array. Once I had found enough photographs, I had to – I had presented the photo lineup that I recently developed to the District Attorney's office, and asked if there were any objections that they felt before I presented that photograph of this lineup. And I was told that the photo lineup was fine."

24  SAC ¶ 70. According to Mr. Collins, it can be inferred from Officer Hight's use of the phrase "I

25  had to" that he was required to consult with the DA's Office, *i.e.*, that he was ordered to, either

26  "by someone above him within the Oakland Police Department or by someone within the

27  Alameda County District Attorney's Office"; furthermore, if the order to consult came from the

28  DA's Office, then "such an order would only reasonably come from the head District Attorney

3

[*i.e.*, Ms. O'Malley] or someone close to her acting on her behalf and with her consent." SAC ¶ 70.

Mr. Collins has failed to plausibly allege that Ms. O'Malley was involved in the second photo lineup. Though, at the 12(b)(6) phase, reasonable inferences are to be made in Mr. Collins's favor, the inferences he asks the Court to make are not reasonable. At bottom, Mr. Collins is simply speculating that Ms. O'Malley was involved.

Accordingly, the Court dismisses all federal claims against Ms. O'Malley based on the approval of the second photo lineup. The dismissal is without prejudice. That is, if Mr. Collins finds, during discovery, evidence to support a claim that Ms. O'Malley was personally involved with the approval of the second photo lineup, then he may seek leave to amend. Absent such, the dismissal of Ms. O'Malley stands.

### 2. Ms. Carvolth

The analysis is different for Ms. Carvolth. According to the County Defendants, there is nothing in the SAC to show that Ms. Carvolth was involved in the second photo lineup either. However, even if Officer Hight did not identify Ms. Carvolth by name, it is a reasonable inference for purposes of this Rule 12(b)(6) motion that she was involved – *i.e.*, it is a fair inference that a line prosecutor at least was involved with the approval of the photo lineup, and the timing suggests that she was that line prosecutor. (Mr. Collins has alleged that the second photo lineup took place on December 19, 2017, and, that, two days later, Ms. Carvolth was part of a meeting in which the police and the DA's Office reviewed the evidence related to the crime.)

In addition, although a close call, it can fairly be inferred that, at the time the second photo lineup was approved, Officer Hight told Ms. Carvolth about the circumstances related to the second photo lineup (*e.g.*, that there had been a prior photo lineup in which the victim did not identify Mr. Collins, that the second photo lineup used a photo of Mr. Collins that had been obtained through a sham traffic stop, and that the second photo lineup placed Mr. Collins in the fourth spot, the same as spot that he occupied in the first photo lineup). This inference can fairly be made in light of Officer Hight's representation that he regularly reads and studies a publication issued by the DA's Office called "Point of View"; that that publication has addressed lineups,

including, in particular, the danger that multiple lineups can be impermissibly suggestive[1]; and that he therefore knows that the totality of the circumstances must be considered to ensure that a lineup is not suggestive in seeking advice from the DA's Office. Assuming that Ms. Carvolth was in fact informed of the circumstances related to the second photo lineup and nevertheless gave her approval, then Mr. Collins has a viable § 1983 claim. *See, e.g.*, *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992) (stating that "the intentional use of unduly suggestive identification procedures can support a § 1983 action"); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (in discussing qualified immunity, noting that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government").[2]

This is not to say, of course, that Ms. Carvolth will necessarily be held liable. Depending on how the facts develop, she may be able to assert that she was not part of the approval of the second photo lineup at all or that, if she was, she is nevertheless protected by absolute immunity (if this was a prosecutorial decision) or at least qualified immunity (*e.g.*, if she did not know the full circumstances related to the second photo lineup). But at this early juncture, Mr. Collins has pled enough to keep Ms. Carvolth in this case.

    3.    <u>County</u>

Finally, to the extent Mr. Collins seeks to hold the County liable, that essentially rests on whether there is a basis to hold Ms. O'Malley accountable (*i.e.*, as the County's final

---

[1] In the SAC, Mr. Collins refers to one specific Point of View issue titled "Lineups and Showups." The Court acknowledges that it is far from clear that Officer Hight read that issue as it was published in the Fall of 2011, which was some six years before the incident at issue. (Indeed, it is not even clear that Officer Hight was a police officer at that time and, if so, that he worked for Alameda County.) Nevertheless, it is not unreasonable to infer from this publication that the DA's Office has given guidance to the police on the issue of lineups. Moreover, there is a fair likelihood that, as part of his own regular police training, Officer Hight has been exposed to the issue of lineups, including the potential for suggestive lineups.

[2] The Court rejects the County Defendants' attempt to reargue absolute prosecutorial immunity here. For example, the County Defendants contend that, "because the second lineup was held one day before Plaintiff's arrest, it is *likely* that OPD presented evidence, including the lineup photos to the District Attorney's Office, to determine whether additional evidence was needed for prosecution." Mot. at 15 (emphasis added). But at this juncture of the proceedings, inferences are to be made in Mr. Collins's favor, and the bottom line is that, at the time of the second photo lineup, Mr. Collins had not yet been arrested.

policymaker). As indicated above, there are insufficient allegations that Ms. O'Malley herself, as final decisionmaker, approved the second photo lineup. Also, there are no allegations to support a theory that Ms. O'Malley ratified Ms. Carvolth's approval of the second photo lineup. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (stating that, "[t]o show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it'"). Finally, there are no allegations to support a failure-to-train theory – *e.g.*, that there was an obvious deficiency with respect to procedures related to lineups. *See id.* at 1240-41 (noting that liability for a failure to train requires deliberate indifference – *e.g.*, the need for more training is so obvious and the inadequacy so likely to result in the violation of constitutional rights that the final policymaker can reasonably be said to have been deliberately indifferent to the need). The *Monell* claim is therefore dismissed – as above without prejudice.

E.   Punitive Damages

The County Defendants have also moved to dismiss any claim for punitive damages against the individual prosecutors. Based on the analysis above, there is no federal claim against Ms. O'Malley and therefore no claim for punitive damages. For Ms. Carvolth, however, the Court cannot say that punitive damages are not plausible. If, *e.g.*, Ms. Carvolth intentionally endorsed a suggestive lineup (*i.e.*, deliberately fabricated evidence), then punitive damages could well be awarded.

F.   Injunctive Relief

Finally, the County Defendants have contested Mr. Collins's claim for injunctive relief in the SAC. In his opposition, Mr. Collins states that he inadvertently included the claim in his SAC. *See* Opp'n at 14. The claim for injunctive relief is therefore be dismissed.

///
///
///
///
///
///

## II. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the County Defendants' motion to dismiss. The federal claims against Ms. O'Malley and the County are dismissed without prejudice. The federal claims against Ms. Carvolth may proceed but the only factual predicate for those claims is her approval of the second photo lineup.

This order disposes of Docket No. 34.

**IT IS SO ORDERED**.

Dated: May 3, 2021

_____
EDWARD M. CHEN
United States District Judge

7