UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| KEVIN COLLINS,<br><br>      Plaintiff,<br><br>      v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>      Defendants. | Case No. 20-cv-05477-EMC   (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 61 |

Now pending before the court is a jointly-filed letter brief presenting a discovery dispute which, at its essence, embodies Plaintiff's request to compel a Defendant (Deputy District Attorney Ashley Carvolth) to answer certain questions during her deposition. *See* Ltr. Br. (dkt. 61) at 4-6; *see also* Exh. 2, Tr. (dkt. 61-2) at 1-8. Plaintiff's portion of the letter brief speaks only in generalities and abstractions, however, a review of the attached deposition transcript excerpts makes it clear that the substance of this dispute is quite simple, and for the following reasons, Plaintiff's request to compel responses from Defendant Carvolth are denied.

In 2017, Plaintiff was arrested and charged with certain violent felonies; however, two years later, the charges were dismissed and Plaintiff was released from custody. *See* Ltr. Br. (dkt. 61) at 1. Thereafter, alleging falsification of evidence and the advancement of inappropriate legal arguments, Plaintiff sued Alameda County, the City of Oakland, as well as a number of attorneys in the District Attorneys' Office, and several police officers. *Id*. During the deposition of one of the defendant-attorneys from the District Attorneys' Office (Defendant Carvolth), Plaintiff's counsel asked a number of questions which Defendant Carvolth was instructed by her counsel not to answer on various grounds including prosecutors' privileges (attorney work product privilege,

deliberative process privilege, and the official information privilege). *See id*. at 2-3. The undersigned has reviewed the Parties' Letter Brief, as well as the attached excerpts from the transcribed deposition (dkt. 61-2) (hereafter, "Tr.") of Defendant Carvolth. The deposition excerpts reflect about a dozen or so questions that were met by various objections and that went unanswered – which the court sees as occupying two distinct categories. *See id*. at 1-8. Virtually all of the questions pertained to a video recording that Plaintiff's counsel played during the deposition, about which he sought to question Defendant Carvolth. *Id*. The video recording itself ostensibly shows the victim of the violent acts with which Plaintiff had originally been charged, in the aftermath of her having been shot, and during which the she reportedly made certain statements about her thoughts as to the identity of the culprit. *Id*.

When Defendant Carvolth was asked if she had seen the video before, she responded that she did not recall; and, when asked if she was aware of the video's existence before the preliminary hearing in the now-dismissed criminal case, Defendant Carvolth responded as such: "[s]ince I don't remember the specific video, I can't say if I recall if it existed before the preliminary hearing or not." *See* Tr. (dkt. 61-2) at 1-2. Thereafter, Plaintiff's counsel ventured into an exercise where a portion of the video would be played, and Defendant Carvolth would be asked to testify as to the content of the video segment that had just been played. *See id*. at 1-7 (e.g., "I'm going to pause it at 1:45. Did you hear her [the victim] say that he [the perpetrator] appeared to be in his late 20s?"). As far as the attached deposition transcript excerpts reflect, Plaintiff's counsel asked Defendant Carvolth to confirm or deny the contents of the video recording through at least 5 (if not, more) questions. *See id*. 2-7. To the extent that Plaintiff seeks an order from this court directing Defendant Carvolth to describe the contents of a video recording that can very well speak for itself, that request is **DENIED** as unnecessary and cumulative, such that it would not constitute a reasonable expenditure of time. Assuming Plaintiff seeks to admit the video recording at trial, there is no legitimate reason that a person with no recollection or knowledge of the video recording must be subjected to deposition questioning that boils down to nothing more than being asked to confirm or deny the contents of the recording after being made to watch it.

As to the second category of questioning, Plaintiff's counsel asked Defendant Carvolth

several questions in the nature of seeking either expert witness testimony or seeking Defendant Carvolth's testimony as to her own (or her office's) mental processes and deliberative impressions (perhaps retrospectively, depending on the extent of Defendant Carvolth's involvement in Plaintiff's prosecution). *See id*. at 1, 5, 7. As to the first of these questions, Plaintiff's counsel asked Defendant Carvolth: "Did you determine in your review of this case that there had been several other descriptions by [the victim] that were inconsistent with this description that's in the case notes on the second paragraph I just read?" *Id*. at 1. Plaintiff justifies this line of questioning by incorrectly noting that, "[m]oreover, the disclosure sought is post-decisional and does not impinge on the DA's deliberative process." *See* Ltr. Br. (dkt. 61) at 4. However, as to this question, Plaintiff's counsel was clearly asking about Defendant Carvolth's deliberative process and mental impressions during the course of her reviewing the case file in preparing for the preliminary hearing – accordingly, as to this question, Plaintiff's request to compel a response is **DENIED**, and Defendants' objections on privilege grounds are **SUSTAINED**.

On at least two other occasions, Plaintiff's counsel asked Defendant Carvolth to render a legal opinion as to whether or not the video recording excerpt she had just been shown (which, as mentioned, she did not recall having ever seen before) "was exculpatory as to Mr. Collins." *See* Tr. (dkt. 61-2) at 5, 7. Plaintiff seeks to justify this line of questioning by characterizing it as a mere inquiry about "her present impression and understanding of what is happening in the videos." *See* Ltr. Br. (dkt. 61) at 4. Plaintiff then goes on to add that "one of the key issues[] in this case[] is Defendant [Oakland Police Officer] Hight's failure to include specific exculpatory evidence in his case notes." *Id*. Through this line of questioning, it appears that Plaintiff seeks to transform a party opponent's fact deposition into expert testimony (on a question of law nonetheless) through which Defendant Carvolth might be compelled to render a legal opinion about the contents of a video recording about which she had no independent prior recollection.[1]

---

[1] *See e.g.*, *ACI Constr., Ltd. Liab. Co. v. United States*, No. 1:19-cv-00054-JNP-JCB, 2021 U.S. Dist. LEXIS 214792, at *8 (D. Utah Nov. 5, 2021) ("[A]n IRS fact witness could not testify as to the legal procedures applicable to the Liens and the NFTL. Additionally, to the extent that ACI seeks a legal opinion from the IRS about the procedures that apply, any such questions would be improper and almost certainly be asking for privileged information."); *see also Tate v. RCI, LLC*, No. H-17-290, 2018 U.S. Dist. LEXIS 152672, at *11 (S.D. Tex. Sep. 7, 2018) ("However, a lawyer cannot testify as an expert or fact witness on

3

1  Neither is it persuasive to note that a "key issue" in this case is another defendant's (that is,
2  Officer Hight's) reported failure to make certain notations in his own case notes. Simply put,
3  Officer Hight's alleged shortcomings in notetaking will neither be proved nor disproved by
4  forcing Defendant Carvolth to render a legal opinion about the legal effects and ramifications of a
5  video recording which presumably speaks for itself. While Plaintiff may be free to argue such
6  legal ramifications from the contents of this video recording at trial, the undersigned sees no
7  reason to accede to Plaintiff's request and force a party defendant to serve as Plaintiff's expert
8  witness on the law and legal issues. Indeed, Plaintiff's portion of the letter brief specifically
9  undercuts its desire to force Defendant Carvolth to answer such questions by claiming that "the
10 deposition questions did not ask about deliberative or policy-making processes, but rather factual,
11 investigative matters." *See* Ltr. Br. (dkt. 61) at 4. However, asking a fact witness whether or not a
12 video recording (regardless of whether or not she is being shown the video for the first time) is
13 legally exculpatory or inculpating as to a particular person ventures far beyond inquiring about
14 "factual, investigative matters"; instead, the question calls for rendering an expert legal opinion at
15 least, if not asking for deliberative process information. Accordingly, Plaintiff's request to compel
16 Defendant Carvolth to opine about the legal ramifications of the contents of the video recordings
17 in question is **DENIED** and Defendants' objections in this regard are **SUSTAINED**.
18     **IT IS SO ORDERED.**
19 Dated: March 30, 2022

_____
ROBERT M. ILLMAN
United States Magistrate Judge

---

28 a legal opinion.") (citing *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997) ("Lawyers may testify as to legal matters when those matters involve questions of fact.").